THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
DANIEL J. O'BRIEN (CA Bar Number 141720)
STEPHEN I. GOORVITCH (CA Bar Number 199325)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Email: daniel.obrien@usdoj.gov
    Telephone: (213) 894-2468
    Facsimile: (213) 894-6269
Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR No. 06-775(B)-GPS |
| Plaintiff, | ) PLEA AGREEMENT FOR |
| | ) MOSHE E. ZIGELMAN |
| v. | ) |
| MOSHE E. ZIGELMAN, | ) |
| Defendant. | ) |

    1.  This constitutes the plea agreement between Moshe E. Zigelman ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. Except as specified in sub-paragraph 17(c) below, which makes the non-prosecution provisions of this agreement binding on the USAO, the United States Attorneys Office for the Eastern District of New York ("EDNY") and the United States Attorneys Office for the Southern District of New York ("SDNY"), this agreement is limited to the USAO and cannot bind any other federal, state or local prosecuting,

administrative or regulatory authorities.

PLEA

2. Defendant agrees to plead guilty to count one of the Second Superseding Indictment (the "Indictment") in <u>United States v. Naftali Tzi Weisz, et al.</u>, CR No. 06-775(B)-GPS.

NATURE OF THE OFFENSE

3. In order for defendant to be guilty of count one, which charges a violation of Title 18, United States Code, Section 371, the following must be true:

(1) Beginning on or about 1996 and continuing through in or about December 2007, there was an agreement between two or more persons to commit at least one crime as charged in the indictment, namely:

(a) To defraud the United States by impairing, obstructing, or defeating the lawful functions and duties of the Internal Revenue Service, through deceitful and dishonest means, or

(b) To aid, assist, procure, counsel, or advise the preparation and presentation to the Internal Revenue Service of the United States Individual Income Tax Return Forms 1040, which were false and fraudulent as to material matters, in violation of Title 26, United States Code, Section 7206(2);

(2) Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

(3) One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

Defendant admits that defendant is, in fact, guilty of this

offense as described in count one of the Indictment.

## PENALTIES

4. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371 is: 5 years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

5. Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

6. Defendant also understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

7. Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including but not limited to, deportation, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

## FACTUAL BASIS

8. Defendant and the USAO agree and stipulate to the statement of facts provided below. This statement of facts includes facts sufficient to support a plea of guilty to the charge described in this agreement and to establish the sentencing guideline factors set forth in paragraph 11 below. It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to defendant that relate to that conduct.

Beginning in or about 1996 and continuing through in or about December 2007, R.K. and other taxpayers (the "contributors") in Los Angeles, California, within the Central District of California, and elsewhere, made contributions to a variety of charitable organizations operating under the umbrella of Spinka, a religious group within Orthodox Judaism.

The contributors made donations to Spinka-related entities through various individuals, including defendant, who was a fundraiser for Spinka and former servant/assistant to Grand Rabbi Naftali Weisz and hence an agent of the Spinka-related entities. Defendant received contributions knowing that charitable donation receipts would be prepared and issued to the contributors indicating that they were entitled to deduct the nominal amounts of their contributions on their income tax returns. Defendant knew that the contributors would use these charitable donation receipts to deduct the full nominal amounts of their contributions on their income tax returns.

Defendant arranged for the contributors to receive reimbursements of anywhere between 80% and 95% of their donations. Defendant arranged for the Spinka-related entities

to give cash to various third parties, who transported the cash to the contributors. Additionally, defendant arranged for certain individuals to have reimbursements deposited into overseas nominee accounts.

By such conduct, defendant knew and agreed with the contributors that they would claim deductions on their income tax returns for the full nominal amount of their Spinka contributions, when in fact they were contributing only 5% to 20% of such nominal amounts to Spinka. In such manner, defendant, the contributors, and others agreed to impede, impair, obstruct, and defeat the lawful governmental functions of the Internal Revenue Service, and to defraud the United States. Defendant became a member of the conspiracy knowing of these objects and intending to help accomplish them through the conduct described above.

On or about September 20, 2006, defendant caused the deposit of a $25,000 check from R.K. issued for the benefit of a Spinka-related entity. On or about December 18, 2006, defendant caused $20,125 to be wired from a bank in Toronto, Canada to an account at a bank in Israel that was controlled by R.K. as part of the reimbursement arrangement.

On or about January 7, 2007, defendant calculated that the Spinka charitable organizations had received, in furtherance of the conspiracy, $8,493,659 through defendant's efforts during the 2006 calendar year and that Spinka had "profits" on this amount of $744,596, after deducting the amounts paid back to the various contributors.

The total amount of contributions to Spinka-related entities in furtherance of the conspiracy during the year 2006

totaled $8,493,659 of which $7,749,063 was returned to contributors. The total amount of contributions to Spinka-related entities by R.K. during the government's undercover investigation, excluding those during the 2006 calendar year, totaled $295,000, of which $276,430 was returned to R.K.

## WAIVER OF CONSTITUTIONAL RIGHTS

9. By pleading guilty, defendant gives up the following rights:

    a) The right to persist in a plea of not guilty.

    b) The right to a speedy and public trial by jury.

    c) The right to the assistance of legal counsel at trial, including the right to have the Court appoint counsel for defendant for the purpose of representation at trial. (In this regard, defendant understands that, despite his plea of guilty, he retains the right to be represented by counsel - and, if necessary, to have the court appoint counsel if defendant cannot afford counsel - at every other stage of the proceedings.)

    d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

    e) The right to confront and cross-examine witnesses against defendant.

    f) The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

    g) The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

      h)  Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

### SENTENCING FACTORS

10.  Defendant understands that the Court is required to consider the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") among other factors in determining defendant's sentence. Defendant understands that the Sentencing Guidelines are only advisory, and that after considering the Sentencing Guidelines, the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime of conviction.

11.  Defendant and the USAO agree to the following applicable sentencing guideline factors:

| | | |
|---|---|---|
| Base Offense Level (Tax Loss) | : | 22 or 24 [U.S.S.G. §§ 2T1.9, 2T1.1 & 2T4.1] |
| Offense Involved Sophisticated Means | : | +2 [U.S.S.G. § 2T1.1(b)(1)] |

12.  The parties agree to litigate whether the tax loss in this case is less than, or exceeds, $2,500,000 and therefore whether the base offense level should be 22 or 24 under U.S.S.G. § 2T4.1.[1] The parties agree to litigate the applicability of the adjustment for "mitigating role" under U.S.S.G. § 3B1.2. Defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to

---

[1] The government is free to argue that the tax loss is over $2,500,000, but will not argue that the tax loss is over $7,000,000. The defendant is free to argue that the tax loss is less than $2,500,000, but will not argue that the tax loss is under $1,000,000.

the applicable Offense Level be imposed.

13. The parties acknowledge that, under <u>United States v. Booker</u> and 18 U.S.C. § 3553(a), that the Court may impose a sentence outside of the range provided for by the United States Sentencing Guidelines. In this regard, the parties agree as follows:

a. If the government determines, in its exclusive judgment, that defendant has provided extraordinary acceptance of responsibility with regard to the charges in this case, the government agrees to recommend a sentence below the sentencing range otherwise set by the sentencing guidelines pursuant to 18 U.S.C. § 3553(a), provided that defendant complies with all of his obligations under this agreement. Notwithstanding the foregoing, defendant retains the right to argue for a sentence below the range established by the Sentencing Guidelines, pursuant to 18 U.S.C. § 3553(a) based upon extraordinary acceptance of responsibility.

b. Defendant, pursuant to the factors set forth in 18 U.S.C. § 3553(a), further reserves the right to argue for any sentence below the range established by the Sentencing Guidelines, including but not limited to the following mitigating factors: (1) defendant's relative culpability; (2) defendant's mental/psychiatric/psychological state; (3) defendant's personal history and characteristics; (4) defendant's physical condition; (5) the fact that defendant did not financially benefit by the offense conduct to any material degree but rather intended to benefit charitable organizations involved in the education and religious instruction of the youth, and (6) defendant's role in the offense conduct. The

government agrees that, based on all of these factors, a three-level reduction in sentence is appropriate, but reserves its right to agree to or dispute any further reduction of sentence requested by defendant.

14. There is no agreement as to defendant's criminal history or criminal history category.

15. The stipulations in this agreement do not bind either the United States Probation Office or the Court. Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the calculation of the sentence, and (c) argue on appeal and collateral review that the Court's sentencing guidelines calculations are not error, although each party agrees to maintain its view that the calculation in paragraph 12 are consistent with the facts of this case.

### DEFENDANT'S PLEA OBLIGATIONS

16. In connection with his plea, defendant agrees that he will:

   a) Plead guilty as set forth in this agreement.

   b) Abide by all sentencing stipulations contained in this agreement.

   c) Be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

   d) Appear as ordered for all court appearances, surrender as ordered for service of any sentence of confinement, pay any ordered fines and restitution, obey all conditions of any bond, and obey any other ongoing court order in this matter.

   e) Pay the applicable special assessment at or before

the time of sentencing unless defendant lacks the ability to pay.

     f) Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

### THE USAO'S OBLIGATIONS

17. If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

     a) To abide by all sentencing stipulations contained in this agreement.

     b) At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, to recommend a two-level reduction in the applicable sentencing guideline offense level, pursuant to U.S.S.G. § 3E1.1, and to recommend and move for an additional one-level reduction if available under that section.

     c) Not to further prosecute defendant for any offense, or seek criminal or civil forfeitures, arising out of defendant's conduct described in the factual recitations set forth in this agreement, or arising out of the allegations of the Second Superseding Indictment. The parties acknowledge that the SDNY and EDNY have agreed to be bound by paragraph 17(c), and only paragraph 17(c) of this agreement, as referenced in paragraph 23 below. Defendant understands that the USAO is free to prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.

     d) In connection with defendant's sentencing, to

10

bring to the Court's attention and to request a three-level variance from the sentencing guideline range pursuant to <u>United States v. Booker</u>, 543 U.S. 220 (2005) and the sentencing factors identified in Title 18, United States Code, § 3553, based upon (1) defendant's relative culpability; (2) defendant's mental/psychiatric/psychological state; (3) defendant's personal history and characteristics; (4) defendant's physical condition; and (5) the fact that defendant did not financially benefit by the offense conduct to any material degree but rather intended to benefit charitable organizations involved in, among other things, the education and religious instruction of the youth, and (6) defendant's role in the offense conduct.

  e) To recommend that defendant be sentenced at the low end of the applicable Sentencing Guidelines range provided that the total offense level as calculated by the Court is 20 or higher.

  f) At the time of sentencing, to move to dismiss with respect to defendant the remaining counts of the Second Superseding Indictment, the First Superseding Indictment, and the original Indictment in this matter.

### BREACH OF AGREEMENT

18. If defendant, at any time between the execution of this agreement and defendant's sentencing on a non-custodial sentence or surrender for service on a custodial sentence, whichever is later, knowingly violates or fails to perform any of defendant's obligations under this agreement, the USAO may declare this agreement breached. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, defendant will not be able to withdraw defendant's

guilty plea, and the USAO will be relieved of all of its obligations under this agreement. In particular:

    a) The USAO will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty.

    b) The USAO will no longer be bound by any agreements regarding criminal prosecution, and will be free to prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated not to prosecute pursuant to this agreement.

    c) The USAO will be free to prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

19. Following a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge not filed as a result of this agreement, then:

    a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such prosecution or action.

    b) Defendant gives up all defenses based on the statute of limitations, any claim of preindictment delay, or any speedy trial claim with respect to any such prosecution, except to the extent that such defenses existed as of the date of defendant's signing of this agreement.

## LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

20. Defendant gives up the right to appeal any sentence imposed by the Court, and the manner in which the sentence is

determined, provided that the Court imposes a sentence within or below the range corresponding to a total offense level of 16 or lower. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or a explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Notwithstanding the foregoing, defendant retains the ability to appeal the amount or terms of any restitution order and the conditions of any probation or supervised release imposed by the court, with the exception of the following: standard conditions set forth in district court General Orders 318 and 01-05; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

21. The USAO gives up its right to appeal the Court's sentence, provided that the Court imposes a sentence within or above the range corresponding to a total offense level of 20.

## COURT NOT A PARTY

22. The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations. Even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from any stipulation, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. No one – not the prosecutor, defendant's attorney,

or the Court - can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

23. Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel, other than the agreements of EDNY and SDNY to be bound by paragraph 17 (c), and only paragraph 17 (c) of this agreement, as evidenced by letters dated June 24, 2008 and June 19, 2008 from EDNY and SDNY, respectively. Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

24. The parties agree and stipulate that this Agreement will be considered part of the record of defendant's guilty plea hearing as if the entire Agreement had been read into the record of the proceeding.

This agreement is effective upon signature by defendant and an Assistant United States Attorney.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

THOMAS P. O'BRIEN
United States Attorney

_/s/ DJO'B_____                    _6/24/08_____
DANIEL J. O'BRIEN                            Date
Assistant United States Attorney

I have had this agreement read to me in Hebrew and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree

14

to those terms. My attorney has advised me of my rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_____           JUN 20, 08
MOSHE E. ZIGELMAN                       Date
Defendant

I, MEIR TURNER, am fluent in written and spoken English and Hebrew languages. I accurately translated this entire agreement from English into Hebrew to defendant Moshe E. Zigelman on this date.

_____           6/20/8
Interpreter  MEIR TURNER              Date

I am Moshe E. Zigelman's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

CALDWELL LESLIE & PROCTOR, PC

BY: _____       24 June 2008
MICHAEL J. PROCTOR                       Date
Counsel for Defendant
Moshe E. Zigelman