THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
DANIEL J. O'BRIEN (CA Bar Number 141720)
STEPHEN I. GOORVITCH (CA Bar Number 199325)
BRIAN E. KLEIN (CA Bar Number 258486)
Assistant United States Attorneys
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Email: daniel.obrien@usdoj.gov
     Telephone: (213) 894-2468
     Facsimile: (213) 894-6269
Attorneys for Plaintiff
United States of America

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,        )  CR No. 06-775(C)-JFW
                                 )
               Plaintiff,        )  <u>PLEA AGREEMENT FOR</u>
                                 )  <u>NAFTALI TZI WEISZ</u>
               v.                )
                                 )
NAFTALI TZI WEISZ, et al.        )
                                 )
               Defendant.        )
_____  )

                              **I.**

                       **INTRODUCTION**

     1.    This constitutes the binding plea agreement in the
above-captioned case (the "Agreement") between the United States
Attorney's Office for the Central District of California ("USAO")
and defendant Naftali Tzi Weisz ("defendant").  Except as
specified in sub-paragraph 22(B) below, which makes the non-
prosecution provisions of this agreement binding on the USAO, the
United States Attorneys Office for the Eastern District of New
York ("EDNY") and the United States Attorneys Office for the

1  Southern District of New York ("SDNY"), this Agreement is limited
2  to the USAO and cannot bind any other federal, state or local
3  prosecuting, administrative, enforcement, or regulatory
4  authorities.  This Agreement is entered into pursuant to Federal
5  Rule of Criminal Procedure 11(c)(1)(c).
6       2.  Defendant acknowledges that this Agreement is entered
7  into as part of a "package deal" that involves (a) defendant
8  pleading guilty to a certain charge pursuant to the terms of this
9  Agreement, (b) defendants Yeshiva Imrei Yosef ("YIY"), Yaacov
10  Zeivald ("Zeivald"), Moshe Arie Lazar ("Lazar"), Yosef Nachum
11  Naiman ("Naiman"), and Alan Jay Friedman ("Friedman") pleading
12  guilty to certain charges pursuant to the terms of separate plea
13  agreements, and (c) a case disposition agreement executed by
14  representatives of Spinka and all of its constituent
15  organizations, including Yeshivath Spinka ("YS"), Machne Sva
16  Rotzohn ("MSR"), Central Rabbinical Seminary ("CRS"), and Mesivta
17  Imrei Yosef Spinka ("MIYS").  Defendant and the USAO agree that
18  this Agreement and the obligations it creates will not become
19  binding on the USAO and defendant unless and until each of the
20  defendants YIY, Zeivald, Lazar, Naiman, and Friedman executes and
21  delivers to the USAO his/its respective plea agreement and enters
22  a plea of guilty in accordance with such agreement; and
23  authorized representatives of all Spinka organizations, including
24  YS, MSR, CRS, and MIYS, execute and deliver to the USAO the case
25  disposition agreement.  Should any one of the foregoing events
26  not occur, this Agreement will become null and void and the
27  parties to it will be relieved of all of their obligations under
28

2

1  it.

2      3.    Defendant acknowledges that he has directed his

3  attorney to negotiate this Agreement and the larger package deal

4  of which it is a part; he has discussed with his attorney, and

5  carefully considered, the possible advantages and disadvantages

6  of entering into an agreement with the USAO that is part of this

7  package deal; he is entering into this Agreement and the larger

8  package deal freely and voluntarily; he is entering into this

9  Agreement and the larger package deal because he believes this

10  Agreement and the larger package deal to be in his best

11  interests; and he is not entering into this Agreement or the

12  larger package deal because of threats, coercion, or other undue

13  influence by the USAO, any of the other defendants, their

14  counsel, or anyone else.

15                              **II.**

16        **FEDERAL RULE OF CRIMINAL PROCEDURE 11(c)(1)(C)**

17      4.    This Agreement is entered into pursuant to Federal Rule

18  of Criminal Procedure 11(c)(1)(C).  The Court is not a party to

19  this Agreement and need not accept this Agreement.  Prior to the

20  defendant being sentenced pursuant to this Agreement, the Court

21  will advise the USAO and the defendant whether it agrees to be

22  bound by the terms of this Agreement, and specifically whether it

23  will impose a sentence within the limitation established in

24  paragraph 18.

25      5.    If the Court determines not to be bound by the terms of

26  this Agreement prior to any of the defendants entering their

27  guilty pleas, then neither of the parties to this Agreement will

28

3

be bound by it or any of its terms or conditions, the Agreement
will become null and void, the parties to the Agreement will be
relieved of their obligations under it, and the parties to the
Agreement will return to their positions prior to execution of
the Agreement.

6.    If the Court determines after one or more of the
defendants have entered his/its guilty plea(s) not to be bound by
this Agreement or any of the other defendant's plea agreement,
then, pursuant to Federal Rule of Criminal Procedure 11(c)(5),
the Court will give that defendant or those defendants the
opportunity to withdraw his/its guilty plea(s), the parties to
this Agreement will no longer be bound by this Agreement or any
of its terms or conditions, the Agreement will become null and
void, the parties to the Agreement will be relieved of their
obligations under it, and the parties to the Agreement will
return to their positions prior to execution of the Agreement.

**III.**

**GUILTY PLEA**

7.    Defendant agrees to plead guilty to Count One of the
Third Superseding Indictment in <u>United States v. Naftali Tzi
Weisz, et al.</u>, CR No. 06-775(C)-JFW.

**IV.**

**NATURE OF THE OFFENSES**

8.    In order for defendant to be guilty of Count One, which
charges a violation of Title 18, United States Code, Section 371,
the following must be true:

(1)  From at least 2004 and continuing through in

or about December 2007, there was an agreement between two or more persons to commit at least one crime as charged in the indictment, namely

(a) to defraud the United States by impairing, obstructing, or defeating the lawful functions and duties of the Internal Revenue Service, through deceitful and dishonest means, or

(b) to conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business, in violation of Title 18, United States Code, Section 1960;

(2)  Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

(3)  One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

In order for a defendant to violate Title 18, United States Code, Section 1960(a), the following must be true:

a)    Defendant knowingly conducted, controlled, managed, supervised, directed, or owned all or part of a money transmitting business;

b)    The money transmitting business was unlicensed in that either (1) it was operated without an appropriate money transmitting license in a State where such operation is illegal under State law; (2) it failed to comply with federal money transmitting business registration requirements; or (3) it involved the transportation or transmission of funds that were

5

known to the defendant to have been derived from a criminal offense or intended to be used to promote or support unlawful activity;

c) Defendant either knew that the money transmitting business was not licensed, not registered, or knew that the funds being transmitted were derived from a criminal offense or were intended to be used to promote or support unlawful activity; and

d) The money transmitting business affected interstate or foreign commerce.

9. Defendant admits that he is, in fact, guilty of this offense charged in Count One of the Third Superseding Indictment.

**V.**

**PENALTIES**

10. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371 is: 5 years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11. Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

12.    Defendant also understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

13.    Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including but not limited to, deportation, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

**VI.**

**FACTUAL BASIS**

14.    Defendant and the USAO agree and stipulate to the statement of facts provided below.  This statement of facts includes facts sufficient to support a plea of guilty to the charge described in this agreement.  It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to defendant that relate to that conduct.

Background

Spinka is a religious group that operated a variety of charitable organizations based in New York (collectively "Spinka charitable organizations"), including Yeshiva Imrei Yosef ("YIY"), Yeshivath Spinka ("YS"), Central Rabbinical Seminary ("CRS"), Machne Sva Rotzohn ("MSR"), and Mesivta Imrei Yosef

7

1  Spinka ("MIY"). Naftali Tzi Weisz ("defendant") was the Grand
2  Rabbi, or spiritual leader, of Spinka. In addition, as Grand
3  Rabbi, defendant was involved in fund-raising activities for
4  Spinka. Moshe E. Zigelman ("Zigelman") was a fundraiser for
5  Spinka. Neither defendant, Zigelman, nor any Spinka charitable
6  organization was registered with the United States Department of
7  Treasury or licensed by the State of New York to operate a money
8  transmitting business at any time.

9  Obstructing and Impeding the Internal Revenue Service

10      Beginning from at least 2004 and continuing through in or
11  about December 2007, various taxpayers (collectively the
12  "contributors") in Los Angeles, California, and elsewhere, made
13  contributions to the Spinka charitable organizations. The
14  contributors made donations to Spinka charitable organizations
15  through various individuals affiliated with Spinka. Defendant
16  provided oversight to Spinka in connection with the
17  contributions.

18      Many of the large dollar contributions were received by
19  Spinka subject to the understanding that Spinka would return a
20  substantial percentage of the contribution, between 80% and 95%,
21  back to the contributor. The defendant knew that there was a
22  quid pro quo for the contributions – that the contributors would
23  receive a substantial portion of the contribution back from
24  Spinka. The moneys retained by Spinka were used for charitable
25  purposes in the United States and in Israel.

26      Zigelman and others acting on behalf of Spinka regularly
27  provided receipts to the contributors in the full nominal amount
28

of their contributions.  Knowing that some contributors could use
the receipts given for their contributions to Spinka to support
charitable tax deductions that they were not entitled to because
they got cash back, and may not have used all the returned cash
for charity, defendant failed to inquire into the practice of
issuing receipts by Zigelman and others and failed to take steps
to insure that the receipts given reflected the actual charitable
contributions made.  By allowing the Spinka entities to be used
as a vehicle to generate false charitable deductions, and by
failing to inquire into the improper use of the charitable
receipts and cancelled checks, defendant's actions constituted an
implicit agreement with the contributors and others to impede,
impair, obstruct, and defeat the lawful governmental functions of
the Internal Revenue Service and to defraud the United States.

<u>Unlicensed Money Remitting</u>

Defendant and Zigelman, who were living in New York, and
others, agreed to manage and conduct an informal money transfer
system, whereby individuals in Los Angeles and other parts of the
country would deliver to Spinka contributors money that they had
received from third parties who in turn were reimbursed by
Spinka.  This informal network allowed defendant, Zigelman, and
others to engage as a business in facilitating the transfer of
large amounts of cash outside the conventional financial
institution system.  These transfers of funds affected interstate
commerce.

The illegal money transfer business worked in the following
manner.  A contributor delivered a check payable to one of the

Spinka entities to Zigelman.  Zigelman would then deposit the check in a bank account controlled by Spinka.  Defendant, Zigelman, and others then directed that wire transfers be used to remit funds from the Spinka bank accounts to Bircas Asher and/or Tzidkat Levy Yitzchak Ltd in Israel.  With regard to those funds remitted to Bircas Asher and/or Tzidkat Levy Yitzchak, defendant, Zigelman and others directed those entities: (1) to remit some portion of those funds to certain individuals in Los Angles and other parts of the country who would then deliver money back to the contributors, or (2) in certain instances, send some portion of those funds to Israeli bank accounts controlled by the contributor or his/her designee.

At the time defendant engaged in these activities, he knew that he had not obtained any registration with the Department of Treasury or any license from any state with respect to the operation of a money transmitting business and he knew that neither Zigelman nor any Spinka organization had obtained any registration or license to operate a money transmitting business.

<u>Overt Acts</u>

On January 7, 2007, defendant reviewed Zigelman's calculation that the Spinka charitable organizations had received, in furtherance of the conspiracy, $8,493,659 through Zigelman's efforts, overseen by defendant, during the 2006 calendar year and that Spinka had "profits" on this amount of $744,596, after deducting the amounts paid back to the various contributors and paid to charities in Israel.

On January 7, 2007, defendant and Zigelman discussed on the

10

telephone that Naiman should give $116,000 to Friedman and that

Friedman should use $18,600 of that to give a contributor 93% of

his $20,000 contribution.

**VII.**

**WAIVER OF CONSTITUTIONAL RIGHTS**

15.    By pleading guilty, defendant gives up the following

rights:

a)    The right to persist in a plea of not guilty.

b)    The right to a speedy and public trial by jury.

c)    The right to the assistance of legal counsel at

trial, including the right to have the Court appoint counsel for

defendant for the purpose of representation at trial.  (In this

regard, defendant understands that, despite his plea of guilty,

he retains the right to be represented by counsel - and, if

necessary, to have the court appoint counsel if defendant cannot

afford counsel - at every other stage of the proceedings.)

d)    The right to be presumed innocent and to have the

burden of proof placed on the government to prove defendant

guilty beyond a reasonable doubt.

e)    The right to confront and cross-examine witnesses

against defendant.

f)    The right, if defendant wished, to testify on

defendant's own behalf and present evidence in opposition to the

charges, including the right to call witnesses and to subpoena

those witnesses to testify.

g)    The right not to be compelled to testify, and, if

defendant chose not to testify or present evidence, to have that

11

choice not be used against defendant.

h)  Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and any other claims that might be raised in pretrial motions that have been filed or could be filed.

## VIII.

### SENTENCING FACTORS

16.  Defendant understands that the Court is required to consider the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") among other factors in determining defendant's sentence.  Defendant and the USAO have no agreement concerning the applicable Sentencing Guidelines or Sentencing Guideline factors.  There is no agreement as to defendant's criminal history or criminal history category.

17.  Defendant further understands that, under United States v. Booker and 18 U.S.C. § 3553(a), the Sentencing Guidelines are only advisory, that the Court retains discretion to impose a sentence outside of the range provided for by the Sentencing Guidelines, and that the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7) in determining defendant's sentence.

## IX.

### BINDING SENTENCE

18.  Upon consideration of the sentencing factors identified in 18 U.S.C. § 3553(a)(1)-(7), defendant and the USAO agree that as part of this binding plea agreement, the term of imprisonment imposed by the Court as part of the sentence in this case should

1  not exceed 36 months, although both parties reserve their right

2  to argue for a lower term of imprisonment.  There is no agreed-

3  upon limitation with respect to any fine or term of supervised

4  release, other than they will be within the statutory maximum.

5      19.  The parties are free to supplement the stipulated facts

6  contained within this agreement by supplying relevant information

7  to the United States Probation Office and the Court and to

8  correct any and all factual misstatements relating to the

9  imposition of sentence.

10     20.  Defendant understands that in the event the Court

11  accepts this Agreement, the Court will be free to exercise its

12  discretion to impose any term of imprisonment within the range of

13  zero to 36-months imprisonment, with the Court retaining

14  discretion to substitute community confinement or home detention

15  for any portion of the term of imprisonment.

16                              **X.**

17                    **DEFENDANT'S OBLIGATIONS**

18     21.  Defendant agrees that he will:

19          a)  Plead guilty as set forth in this Agreement.

20          b)  Provide a sufficient factual basis to support

21  his plea of guilty;

22          c) Abide by all sentencing stipulations contained

23  in this Agreement;

24          d)  Be truthful at all times with Pretrial Services,

25  the U.S. Probation Office, and the Court.

26          e)  Appear as ordered for all court appearances,

27  surrender as ordered for service of any sentence of confinement,

28

                              13

pay any ordered fines and restitution, obey all conditions of any bond, and obey any other ongoing court order in this matter.

f) Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay.

g) Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

## XI.

### THE USAO'S OBLIGATIONS

22.  If defendant complies fully with all of his obligations under this Agreement, the USAO agrees:

a)  To abide by all sentencing stipulations contained in this agreement.

b)  Not to further prosecute defendant for any offense, any pending forfeiture proceeding, or seek criminal or civil forfeitures, arising out of defendant's conduct described in the factual recitations set forth in this agreement, or arising out of the allegations made against defendant in the Third Superseding Indictment.  The parties acknowledge that the SDNY and EDNY have agreed to be bound by paragraph 22(b), and only paragraph 22(b) of this agreement, as referenced in paragraph 27 below.  Defendant understands that the USAO remains free to prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.

c)  At the time of sentencing, to move to dismiss with respect to defendant the remaining counts of the Third Superseding Indictment, the Second Superseding Indictment, the

14

First Superseding Indictment, and the original Indictment in this matter.

## XII.

### BREACH OF AGREEMENT

23.    If defendant, at any time between the execution of this agreement and defendant's sentencing on a non-custodial sentence or surrender for service on a custodial sentence, whichever is later, knowingly violates or fails to perform any of defendant's obligations under this agreement, the USAO may declare this agreement breached.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, defendant will not be able to withdraw defendant's guilty plea (if defendant has previously entered a guilty plea), and the USAO will be relieved of all of its obligations under this agreement. In particular:

a)    The USAO will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty (if defendant has previously entered a guilty plea).

b)    The USAO will no longer be bound by any agreements regarding criminal prosecution, and will be free to prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated not to prosecute pursuant to this agreement.

c)    The USAO will be free to prosecute defendant for false statement, obstruction of justice, and perjury based on any

15

1  knowingly false or misleading statement by defendant.

2      24.  Following a knowing and willful breach of this

3  agreement by defendant, should the USAO elect to pursue any

4  charge not filed as a result of this agreement, then:

5          a)  Defendant agrees that any applicable statute of

6  limitations is tolled between the date of defendant's signing of

7  this agreement and the commencement of any such prosecution or

8  action.

9          b)  Defendant gives up all defenses based on the

10 statute of limitations, any claim of preindictment delay, or any

11 speedy trial claim with respect to any such prosecution, except

12 to the extent that such defenses existed as of the date of

13 defendant's signing of this agreement.

14                          **XIII.**

15      **LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK**

16     25.  Defendant gives up the right to appeal any sentence

17 imposed by the Court, and the manner in which the sentence is

18 determined, provided that the Court imposes a term of

19 imprisonment at or below the 36-month cap.  Defendant also gives

20 up any right to bring a post-conviction collateral attack on the

21 conviction or sentence, except a post-conviction collateral

22 attack based on a claim of ineffective assistance of counsel, a

23 claim of newly discovered evidence, or a explicitly retroactive

24 change in the applicable sentencing statutes, or statutes of

25 conviction.  Notwithstanding the foregoing, defendant retains the

26 ability to appeal the amount or terms of any restitution order

27 and the conditions of any probation or supervised release imposed

28

                            16

1  by the court, with the exception of the following: standard

2  conditions set forth in district court General Orders 318, 01-05,

3  and 05-02; the drug testing conditions mandated by 18 U.S.C. §§

4  3563(a)(5) and 3583(d); and the alcohol and drug use conditions

5  authorized by 18 U.S.C. § 3563(b)(7).

6      26.  The USAO gives up its right to appeal the Court's

7  sentence, provided that the Court imposes a term of imprisonment

8  at or below the 36-month cap.

9                              **XIV.**

10                 <u>**NO ADDITIONAL AGREEMENTS**</u>

11      27.  Except as set forth herein, there are no promises,

12  understandings or agreements between the USAO and defendant or

13  defendant's counsel, other than the agreements of EDNY and SDNY

14  to be bound by paragraph 22(b), and only paragraph 22(b) of this

15  agreement.  Nor may any additional agreement, understanding or

16  condition be entered into unless in a writing signed by all

17  parties or on the record in court.

18                              **XV.**

19          <u>**INCORPORATION INTO RECORD OF PLEA PROCEEDINGS**</u>

20      28.  The parties agree and stipulate that this Agreement

21  will be considered part of the record of defendant's guilty plea

22  hearing as if the entire Agreement had been read into the record

23  of the proceeding.

24      This agreement is effective upon signature by defendant and

25  an Assistant United States Attorney.

26  AGREED AND ACCEPTED

27  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF CALIFORNIA

28

                               17

THOMAS P. O'BRIEN
United States Attorney

_____                    7/9/09
DANIEL J. O'BRIEN                             _____
Assistant United States Attorney             Date

        I have read this agreement and have carefully discussed

every part of it with my attorney.  I understand the terms of

this agreement, and I voluntarily agree to those terms.  My

attorney has advised me of my rights, of possible defenses, of

the Sentencing Guideline provisions, and of the consequences of

entering into this agreement.  I also understand that this

agreement is part of a package agreement involving dispositions

of charges against other defendants named in the Third

Superseding Indictment, have discussed with my counsel the

advantages and disadvantages of entering into this Agreement as

part of the package agreement, and have voluntarily agreed to

enter into this agreement as part of the package agreement.  No

promises or inducements have been made to me other than those

contained in this agreement.  No one has threatened or forced me

in any way to enter into this agreement.  Finally, I am satisfied

with the representation of my attorney in this matter.

_____                    July 8, 2009
NAFTALI TZI WEISZ                             _____
Defendant                                    Date

        I am Naftali Tzi Weisz's attorney.  I have carefully

discussed every part of this agreement with my client.  Further,

I have fully advised my client of his rights, of possible

1  defenses, of the Sentencing Guidelines' provisions, and of the
2  consequences of entering into this agreement.  I have also
3  explained to my client that this agreement is part of a package
4  agreement involving dispositions of charges against other
5  defendants in this case and have discussed with him the
6  advantages and disadvantages of entering into this agreement as
7  part of the package agreement.  To my knowledge, my client's
8  decision to enter into this agreement is an informed and
9  voluntary one.

BY: _____          7/08/09
    BRIAN HENNIGAN                      Date
    Counsel for Defendant
    Naftali Tzi Weisz

BY: _____          7/08/09
    THOMAS POLLACK                      Date
    Counsel for Defendant
    Naftali Tzi Weisz

19