THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
DANIEL J. O'BRIEN (CA Bar Number 141720)
STEPHEN I. GOORVITCH (CA Bar Number 199325)
BRIAN E. KLEIN (CA Bar Number 258486)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Email: daniel.obrien@usdoj.gov
    Telephone: (213) 894-2468
    Facsimile: (213) 894-6269
Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 06-775(C)-JFW |
| Plaintiff, | <u>PLEA AGREEMENT FOR MOSHE ARIE LAZAR</u> |
| v. | |
| NAFTALI TZI WEISZ, et al. | |
| Defendant. | |

**I.**

**INTRODUCTION**

1. This constitutes the binding plea agreement in the above-captioned case (the "Agreement") between the United States Attorney's Office for the Central District of California ("USAO") and defendant Moshe Arie Lazar ("defendant"). This Agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). This Agreement is limited to the USAO and cannot bind any other federal, state or local prosecuting, administrative, enforcement, or regulatory authorities.

2.   Defendant acknowledges that this Agreement is entered into as part of a "package deal" that involves (a) defendant pleading guilty pursuant to the terms of this Agreement, (b) defendants Naftali Tzi Weisz ("Weisz"), Yeshiva Imrei Yosef ("YIY"), Yaacov Zeivald ("Zeivald"), Josef Nachum Naiman ("Naiman"), and Alan Jay Friedman ("Friedman") pleading guilty to certain charges pursuant to the terms of separate plea agreements, and (c) a case disposition agreement executed by representatives of Spinka and all of its constituent organizations, including Yeshivath Spinka ("YS"), Machne Sva Rotzohn ("MSR"), Central Rabbinical Seminary ("CRS"), and Mesivta Imrei Yosef Spinka ("MIYS").  Defendant and the USAO agree that this Agreement and the obligation it creates will not become binding on the USAO and defendant unless and until each of the defendants Weisz, YIY, Zeivald, Naiman, and Friedman executes and delivers to the USAO his/its respective plea agreement and enters a plea of guilty in accordance with such agreement; and Weisz and authorized representatives of all Spinka organizations, including YS, MSR, CRS, and MIYS, execute and deliver to the USAO the case disposition agreement.  Should any one of the foregoing events not occur, this Agreement will become null and void and the parties to it will be relieved of all of their obligations under it.

3.   Defendant acknowledges that he has directed his attorney to negotiate this Agreement and the larger package deal of which it is a part; he has discussed with his attorney, and carefully considered, the possible advantages and disadvantages of entering into an agreement with the USAO that is part of this

package deal; he is entering into this Agreement and the larger package deal freely and voluntarily; he is entering into this Agreement and the larger package deal because he believes this Agreement and the larger package deal to be in his best interests; and he is not entering into this Agreement or the larger package deal because of threats, coercion, or other undue influence by the USAO, the other defendants, their counsel, or anyone else.

## II.

### FEDERAL RULE OF CRIMINAL PROCEDURE 11(c)(1)(C)

4. This Agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The Court is not a party to this Agreement and need not accept this Agreement. Prior to the defendant being sentenced pursuant to this Agreement, the Court will advise the USAO and the defendant whether it agrees to be bound by the terms of this Agreement, and specifically whether it will impose a sentence within the limitation established in paragraph 18.

5. If the Court determines not to be bound by the terms of this Agreement prior to any of the defendants entering their guilty pleas, then neither of the parties to this Agreement will be bound by this Agreement or any of its terms or conditions, the Agreement will become null and void, the parties to the Agreement will be relieved of their obligations under it, and the parties to the Agreement will return to their positions prior to execution of the Agreement.

6. If the Court determines after one or more of the defendants have entered his/its guilty plea(s) not to be bound by

the terms of this Agreement or any of the other defendant's plea agreement, then, pursuant to Federal Rule of Criminal Procedure 11(c)(5), the Court will give that defendant or those defendants the opportunity to withdraw his/its guilty plea(s), the parties to this Agreement will no longer be bound by this Agreement or any of its terms or conditions, the Agreement will become null and void, the parties to the Agreement will be relieved of their obligations under it, and the parties to the Agreement will return to their positions prior to execution of the Agreement.

### III.
### GUILTY PLEA

7.   Defendant agrees to plead guilty to Count Twenty-One of the Third Superseding Indictment, alleging operation of an unlicensed money transmitting business in violation of Title 18, United States Code, Section 1960(a) in <u>United States v. Naftali Tzi Weisz, et al.</u>, CR No. 06-775(C)-JFW.

### IV.
### NATURE OF THE OFFENSES

8.   In order for a defendant to be guilty of Count Twenty-One of the Third Superseding Indictment, which charges a violation of Title 18, United States Code, Section 1960(a), the following must be true:

   a)   Defendant knowingly conducted, controlled, managed, supervised, directed, or owned all or part of a money transmitting business;

   b)   The money transmitting business was unlicensed in that either (1) it was operated without an appropriate money transmitting license in a State where such operation is illegal

under State law; (2) it failed to comply with federal money transmitting business registration requirements; or (3) it involved the transportation or transmission of funds that were known to the defendant to have been derived from a criminal offense or intended to be used to promote or support unlawful activity;

    c)    Defendant either knew that the money transmitting business was not licensed, not registered, or knew that the funds being transmitted were derived from a criminal offense or were intended to be used to promote or support unlawful activity; and

    d)    The money transmitting business affected interstate or foreign commerce.

9. Defendant admits that he is, in fact, guilty of this offense as charged in Count Twenty-One of the Third Superseding Indictment. Defendant and the USAO agree and understand that defendant is pleading guilty to this offense solely based upon his admission that he knew that the money transmitting business was not licensed pursuant to New York law or registered with the Department of Treasury. Defendant has not admitted that he knew that the funds being transmitted were derived from a criminal offense, nor is he required to do so as part of his entry of a plea of guilty to this offense.

## V.

## **PENALTIES**

10. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1960 is: 5 years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss

resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11. Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

12. Defendant also understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

13. Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including but not limited to, deportation, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

**VI.**

**FACTUAL BASIS**

14. Defendant and the USAO agree and stipulate to the statement of facts provided below. This statement of facts includes facts sufficient to support a plea of guilty to the charge described in this agreement. It is not meant to be a

complete recitation of all facts relevant to the underlying criminal conduct or all facts known to defendant that relate to that conduct.

Spinka is a religious group within Orthodox Judaism that operated a variety of charitable organizations based in New York (collectively "Spinka charitable organizations"), including YIY, YS, CRS, MSR, and MIY. Weisz was the Grand Rabbi, or spiritual leader, of Spinka. Zigelman was a Gabbai, or executive assistant, to Grand Rabbi Weisz. Neither Weisz, Zigelman, nor any Spinka charitable organizations was registered with the United States Department of Treasury or licensed by the State of New York to operate a money transmitting business at any time.

Defendant was the owner of Lazar Diamonds, a jewelry business located in Los Angeles, California. Neither defendant, Lazar Diamonds, nor any other organization owned, controlled, conducted, or managed by defendant, was registered with the United States Department of Treasury or was licensed as a money transmitting business at any time.

During the December 2004 through December 2007, Weisz and Zigelman, who were living in New York, defendant, and others, conducted, controlled, and managed an informal money transfer system, whereby individuals in other parts of the country would pay Spinka's debts, and would later be reimbursed by others who owed Spinka money. This informal network allowed defendant, Weisz, Zigelman, and others to engage as a business in facilitating the transfer of large amounts of cash outside the conventional financial institution system. These transfers of funds affected interstate commerce.

On several occasions between 2005 and 2007, defendant received cash from, and delivered cash to, other participants in this informal network and to Spinka contributors. For example, on June 23, 2005, at the direction of Zigelman, a Spinka contributor picked up $15,000 in cash from defendant at defendant's jewelry business. On November 28, 2005, at the direction of Zigelman, the same Spinka contributor picked up $47,500 from defendant. On February 7, 2007, at Zigelman's direction, the contributor picked up $18,600 from defendant. On November 21, 2007, at Zigelman's direction, the contributor picked up $18,500 from defendant.

At the time defendant engaged in these activities, he knew that he had not obtained any registration with the Department of Treasury or any license from any state with respect to the operation of a money transmitting business and he knew that neither Weisz, Zigelman, Zeivald, Naiman, Friedman, nor any Spinka organization had obtained any registration or license to operate a money transmitting business.

## VII.

### WAIVER OF CONSTITUTIONAL RIGHTS

15. By pleading guilty, defendant gives up the following rights:

    a) The right to persist in a plea of not guilty.

    b) The right to a speedy and public trial by jury.

    c) The right to the assistance of legal counsel at trial, including the right to have the Court appoint counsel for defendant for the purpose of representation at trial. (In this regard, defendant understands that, despite his plea of guilty,

he retains the right to be represented by counsel - and, if necessary, to have the court appoint counsel if defendant cannot afford counsel - at every other stage of the proceedings.)

        d)   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

        e)   The right to confront and cross-examine witnesses against defendant.

        f)   The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

        g)   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

        h)   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and any other claims that might be raised in pretrial motions that have been filed or could be filed.

## VIII.

### SENTENCING FACTORS

16.   Defendant understands that the Court is required to consider the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") among other factors in determining defendant's sentence.  Defendant and the USAO have no agreement concerning the applicable Sentencing Guidelines or Sentencing Guideline factors.  There is no agreement as to defendant's criminal history or criminal history category.

17. Defendant further understands that, under <u>United States v. Booker</u> and 18 U.S.C. § 3553(a), the Sentencing Guidelines are only advisory, that the Court retains discretion to impose a sentence outside of the range provided for by the Sentencing Guidelines, and that the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7) in determining defendant's sentence.

## IX.

## **BINDING SENTENCE**

18. Upon consideration of the sentencing factors identified in 18 U.S.C. § 3553(a)(1)-(7), defendant and the USAO agree that as part of this binding plea agreement, the term of imprisonment imposed by the Court as part of the sentence in this case should not exceed six-months, although both parties reserve their right to argue for a lower term of imprisonment. There is no agreed-upon limitation with respect to any fine or term of supervised release, other than they will be within the statutory maximum.

19. The parties are free to supplement these facts by supplying relevant information to the United States Probation Office and the Court and to correct any and all factual misstatements relating to the imposition of sentence.

20. Defendant understands that in the event the Court accepts this Agreement, the Court will be free to exercise its discretion to impose any term of imprisonment within the range of zero to 6-months imprisonment, with the Court retaining discretion to substitute community confinement or home detention for any portion of the term of imprisonment.

**X.**

**DEFENDANT'S OBLIGATIONS**

21. Defendant agrees that he will:

    a) Plead guilty as set forth in this Agreement.

    b) Provide a sufficient factual basis to support his plea of guilty;

    c) Abide by all sentencing stipulations contained in this Agreement;

    d) Be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

    e) Within five calendar days of execution of this Agreement, deliver to undersigned counsel for the government a Stipulation for Entry of Consent Judgment agreed to and executed by defendant, in the form attached to this agreement, in the matter United States v. $521,151.15 in Bank Account Funds and $156,164.00 in United States Currency, CV 08-3398 JFW (FMOx) ("Consent Judgment"). The Consent Judgment forfeits all of the defendant's right, title, and interest in the $521,151.15 and $156,164.00 named as defendants in the civil case (collectively, the "Forfeited Funds").

    f) Defendant further agrees:

        (1) To waive all constitutional and statutory challenges to forfeiture of the Forfeited Funds on any grounds, including that the forfeiture constitutes an excessive fine or punishment;

        (2) To take all steps as requested by the United States that are necessary to pass to the United States clear title to the Forfeited Funds, including, without limitation, the

completing of any other legal documents required for the transfer of title to the United States;

   (3) Not to assist any other person in any effort falsely to contest the forfeiture of the Forfeited Funds; and

   (4) That forfeiture of the Forfeited Funds shall not be counted toward satisfaction of any special assessment, fine, restitution, or any other penalty the Court may impose, nor shall it be counted toward satisfaction of any taxes, penalties, or interest owed to the Internal Revenue Service.

  g) Appear as ordered for all court appearances, surrender as ordered for service of any sentence of confinement, pay any ordered fines and restitution, obey all conditions of any bond, and obey any other ongoing court order in this matter.

  h) Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay.

  i) Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

## XI.

### THE USAO'S OBLIGATIONS

22. If defendant complies fully with all of his obligations under this Agreement, the USAO agrees:

  a) To abide by all sentencing stipulations contained in this agreement.

  b) Not to further prosecute defendant for any offense, any pending forfeiture proceeding, or seek criminal or civil forfeitures, arising out of defendant's conduct described in the factual recitations set forth in this agreement, or arising out

of the allegations made against defendant in the Third Superseding Indictment, except as otherwise specifically set forth in this Agreement and its attachment. Defendant understands that the USAO remains free to prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.

      c) At the time of sentencing, to move to dismiss with respect to defendant the remaining counts of the Third Superseding Indictment, the Second Superseding Indictment, the First Superseding Indictment, and the original Indictment in this matter.

## XII.

### BREACH OF AGREEMENT

23. If defendant, at any time between the execution of this agreement and defendant's sentencing on a non-custodial sentence or surrender for service on a custodial sentence, whichever is later, knowingly violates or fails to perform any of defendant's obligations under this agreement, the USAO may declare this agreement breached. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, defendant will not be able to withdraw defendant's guilty plea (if defendant has previously entered a guilty plea), and the USAO will be relieved of all of its obligations under this agreement. In particular:

      a) The USAO will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty (if defendant has previously entered a guilty

plea).

   b) The USAO will no longer be bound by any agreements regarding criminal prosecution, and will be free to prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated not to prosecute pursuant to this agreement.

   c) The USAO will be free to prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

  24. Following a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge not filed as a result of this agreement, then:

   a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such prosecution or action.

   b) Defendant gives up all defenses based on the statute of limitations, any claim of preindictment delay, or any speedy trial claim with respect to any such prosecution, except to the extent that such defenses existed as of the date of defendant's signing of this agreement.

## XIII.

### LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

  25. Defendant gives up the right to appeal any sentence imposed by the Court, and the manner in which the sentence is determined, provided that the Court imposes a term of imprisonment at or below the six-month cap. Defendant also gives up any right to bring a post-conviction collateral attack on the

conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or a explicitly retroactive change in the applicable sentencing statutes, or statutes of conviction.  Notwithstanding the foregoing, defendant retains the ability to appeal the amount or terms of any restitution order and the conditions of any probation or supervised release imposed by the court, with the exception of the following: standard conditions set forth in district court General Orders 318, 01-05, and 05-02; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

26.   The USAO gives up its right to appeal the Court's sentence, provided that the Court imposes a term of imprisonment at or below the six-month cap.

### XIV.
### NO ADDITIONAL AGREEMENTS

27.   Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel.  Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

### XV.
### INCORPORATION INTO RECORD OF PLEA PROCEEDINGS

28.   The parties agree and stipulate that this Agreement will be considered part of the record of defendant's guilty plea hearing as if the entire Agreement had been read into the record of the proceeding.

This agreement is effective upon signature by defendant and an Assistant United States Attorney.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

THOMAS P. O'BRIEN
United States Attorney

_/s/ (signed)_                        7/10/09
DANIEL J. O'BRIEN              Date
Assistant United States Attorney

I have read this agreement and have carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of entering into this agreement. I also understand that this agreement is part of a package agreement involving dispositions of charges against other defendants named in the Third Superseding Indictment, have discussed with my counsel the advantages and disadvantages of entering into this Agreement as part of the package agreement, and have voluntarily agreed to enter into this agreement as part of the package agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_/s/ (signed)_                        7-10-09
MOSHE ARIE LAZAR              Date
Defendant

```
 1        I am Moshe Arie Lazar's attorney.  I have carefully
 2   discussed every part of this agreement with my client.  Further,
 3   I have fully advised my client of his rights, of possible
 4   defenses, of the Sentencing Guidelines' provisions, and of the
 5   consequences of entering into this agreement.  I have also
 6   explained to my client that this agreement is part of a package
 7   agreement involving dispositions of charges against other
 8   defendants in this case and have discussed with him the
 9   advantages and disadvantages of entering into this agreement as
10   part of the package agreement.  To my knowledge, my client's
11   decision to enter into this agreement is an informed and
12   voluntary one.
13
14   BY: _____        7-10-09
15        HOWARD WEITZMAN              Date
          Counsel for Defendant
16        Moshe Arie Lazar
```