THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
DANIEL J. O'BRIEN (CA Bar Number 141720)
STEPHEN I. GOORVITCH (CA Bar Number 199325)
BRIAN E. KLEIN (CA Bar Number 258486)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Email: daniel.obrien@usdoj.gov
    Telephone: (213) 894-2468
    Facsimile: (213) 894-6269
Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>           v.<br><br>NAFTALI TZI WEISZ, et al.<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CR No. 06-775(C)-JFW

<u>PLEA AGREEMENT FOR
YESHIVA IMREI YOSEF</u>

**I.**

**INTRODUCTION**

1.    This constitutes the binding plea agreement in the above-captioned case (the "Agreement") between the United States Attorney's Office for the Central District of California ("USAO") and defendant Yeshiva Imrei Yosef ("defendant").  This Agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).  Except as specified in sub-paragraph 21(b) below, which makes the non-prosecution provisions of this agreement binding on the USAO, the United States Attorneys Office for the

1 Eastern District of New York ("EDNY") and the United States
2 Attorneys Office for the Southern District of New York ("SDNY"),
3 this agreement is limited to the USAO and cannot bind any other
4 federal, state or local prosecuting, administrative or regulatory
5 authorities.

6     2. Defendant acknowledges that this Agreement is entered
7 into as part of a "package deal" that involves (a) defendant
8 pleading guilty to a certain charge pursuant to the terms of this
9 Agreement, (b) defendants Naftali Tzi Weisz ("Weisz"), Yaacov
10 Zeivald ("Zeivald"), Moshe Arie Lazar ("Lazar"), Yosef Nachum
11 Naiman ("Naiman"), and Alan Jay Friedman ("Friedman") pleading
12 guilty to certain charges pursuant to the terms of separate plea
13 agreements, and (c) a case disposition agreement executed by
14 representatives of Spinka and all of its constituent
15 organizations, including defendant, Yeshivath Spinka ("YS"),
16 Machne Sva Rotzohn ("MSR"), Central Rabbinical Seminary ("CRS"),
17 and Mesivta Imrei Yosef Spinka ("MIYS").  Defendant and the USAO
18 agree that this Agreement and the obligation it creates will not
19 become binding on the USAO and defendant unless and until each of
20 defendants Weisz, Zeivald, Lazar, Naiman, and Friedman executes
21 and delivers to the USAO his respective plea agreement and enters
22 a plea of guilty in accordance with such agreement; and Weisz and
23 authorized representatives of all Spinka organizations, including
24 YS, MSR, CRS, and MIYS, execute and deliver to the USAO the case
25 disposition agreement.  Should any one of the foregoing events
26 not occur, this Agreement will become null and void and the
27 parties to it will be relieved of all of their obligations under
28 it.

1    3.    Defendant acknowledges that it has directed its
2  attorney to negotiate this Agreement and the larger package deal
3  of which it is a part; it has discussed with its attorney, and
4  carefully considered, the possible advantages and disadvantages
5  of entering into an agreement with the USAO that is part of this
6  package deal; it is entering into this Agreement and the larger
7  package deal freely and voluntarily; it is entering into this
8  Agreement and the larger package deal because it believes this
9  Agreement and the larger package deal to be in its best
10 interests; and it is not entering into this Agreement or the
11 larger package deal because of threats, coercion, or other undue
12 influence by the USAO, the other defendants, their counsel, or
13 anyone else.

**II.**

**<u>FEDERAL RULE OF CRIMINAL PROCEDURE 11(c)(1)(C)</u>**

16    4.    This Agreement is entered into pursuant to Federal Rule
17 of Criminal Procedure 11(c)(1)(C).  The Court is not a party to
18 this Agreement and need not accept this Agreement.  Prior to the
19 defendant being sentenced pursuant to this Agreement, the Court
20 will advise the USAO and the defendant whether it agrees to be
21 bound by the terms of this Agreement, and specifically whether it
22 will impose a sentence within the limitation established in
23 paragraph 18.

24    5.    If the Court determines not to be bound by the terms of
25 this Agreement prior to any of the defendants entering their
26 guilty pleas, then neither of the parties to this Agreement will
27 be bound by this Agreement or any of its terms or conditions, the
28 Agreement will become null and void, the parties to the Agreement

3

1  will be relieved of their obligations under it, and the parties
2  to the Agreement will return to their positions prior to
3  execution of the Agreement.

4       6.   If the Court determines after one or more of the
5  defendants have entered his/its guilty plea(s) not to be bound by
6  the terms of this Agreement or any of the other defendant's plea
7  agreement, then, pursuant to Federal Rule of Criminal Procedure
8  11(c)(5), the Court will give that defendant or those defendants
9  the opportunity to withdraw his/its guilty plea(s), the parties
10 to this Agreement will no longer be bound by this Agreement or
11 any of its terms or conditions, the Agreement will become null
12 and void, the parties to the Agreement will be relieved of their
13 obligations under it, and the parties to the Agreement will
14 return to their positions prior to execution of the Agreement.

15                              **III.**

16                          **GUILTY PLEA**

17      7.   Defendant agrees to plead guilty to an Information
18 identical in form to Count One of the Third Superseding
19 Indictment, alleging conspiracy to defraud the United States and
20 to operate an unlicensed money transmitting business in violation
21 of Title 18, United States Code, Section 371 in United States v.
22 Naftali Tzi Weisz, et al., CR No. 06-775(C)-JFW.

23                              **IV.**

24                     **NATURE OF THE OFFENSES**

25      8.   Defendant is criminally responsible for the acts of its
26 agent when:

27           a.   the agent commits a criminal act;

28           b.   the agent acts within the scope of his authority or

4

1  apparent authority; and

2           c.   The intent of the agent was to benefit corporation.

3       9.    In order for an agent to be guilty of the count alleged

4  in the Information, charging a violation of Title 18, United

5  States Code, Section 371, the following must be true:

6           a.    There was an agreement between two or more persons

7  to commit at least one crime as charged in the indictment, namely

8                  - to defraud the United States by impairing,

9  obstructing, or defeating the lawful functions and duties of the

10 Internal Revenue Service, through deceitful and dishonest means;

11 or

12                 - to conduct, control, manage, supervise, direct,

13 and own all or part of an unlicensed money transmitting business,

14 in violation of Title 18, United States Code, Section 1960;

15          b.    Defendant became a member of the conspiracy

16 knowing of at least one of its objects and intending to help

17 accomplish it; and

18          c.    One of the members of the conspiracy performed at

19 least one overt act for the purpose of carrying out the

20 conspiracy.

21     In order for an agent to violate Title 18, United States

22 Code, Section 1960, the following must be true:

23          a.    Defendant knowingly conducted, controlled,

24 managed, supervised, directed, or owned all or part of a money

25 transmitting business;

26          b.    The money transmitting business was unlicensed in

27 that either (1) it was operated without an appropriate money

28 transmitting license in a State where such operation is illegal

1  under State law; (2) it failed to comply with federal money
2  transmitting business registration requirements; or (3) it
3  involved the transportation or transmission of funds that were
4  known to the defendant to have been derived from a criminal
5  offense or intended to be used to promote or support unlawful
6  activity;

7          c.   Defendant either knew that the money transmitting
8  business was not licensed, not registered, or knew that the funds
9  being transmitted were derived from a criminal offense or were
10  intended to be used to promote or support unlawful activity; and

11          d)   The money transmitting business affected interstate
12  or foreign commerce.

13     10.  Defendant admits that it is, in fact, guilty of this
14  offense as charged in the Information.

15                               V.

16                           **PENALTIES**

17     11.  The statutory maximum sentence that the Court can
18  impose for a violation of Title 18, United States Code, Section
19  371 is: 5 years probation; a fine of $500,000 or twice the gross
20  gain or gross loss resulting from the offense, whichever is
21  greatest; and a mandatory special assessment of $400.

22  .    12.  Defendant further understands that the conviction in
23  this case may subject defendant to various collateral
24  consequences, including but not limited to, suspension or
25  revocation of any license or status granted government agencies,
26  including the Internal Revenue Service.  Defendant understands
27  that unanticipated collateral consequences will not serve as
28  grounds to withdraw defendant's guilty plea.

1                              VI.

2                         **FACTUAL BASIS**

3        13.   Defendant and the USAO agree and stipulate to the

4   statement of facts provided below.  This statement of facts

5   includes facts sufficient to support a plea of guilty to the

6   charge described in this agreement.  It is not meant to be a

7   complete recitation of all facts relevant to the underlying

8   criminal conduct or all facts known to defendant that relate to

9   that conduct.

10  Background

11       The following conduct engaged in by Weisz and Moshe E.

12  Zigelman ("Zigelman") is based upon the factual bases contained

13  within their respective plea agreements.

14       Spinka is a religious group that operated a variety of

15  charitable organizations based in New York (collectively "Spinka

16  charitable organizations"), including defendant, YS, CRS, MSR,

17  and MIY.  Weisz was the Grand Rabbi, or spiritual leader, of

18  Spinka.  In addition, as Grand Rabbi, Weisz was involved in fund-

19  raising activities for Spinka.  Zigelman was a fund-raiser for

20  Spinka.  Neither Weisz, Zigelman, defendant, nor any Spinka

21  charitable organization was registered with the United States

22  Department of Treasury or licensed by the State of New York to

23  operate a money transmitting business at any time.

24       Both Weisz and Zigelman were agents of the defendant.  By

25  engaging in the conduct described below, Weisz and Zigelman

26  intended to benefit defendant.

27  Obstructing and Impeding the Internal Revenue Service

28       Beginning from at least 2004 and continuing through in or

                                7

1  about December 2007, various taxpayers (collectively the
2  "contributors") in Los Angeles, California, and elsewhere, made
3  contributions to the defendant and other Spinka charitable
4  organizations.  Contributions issued for the benefit of other
5  Spinka-related entities were typically transferred to bank
6  accounts in defendant's name within a few days of receipt.

7       The contributors made donations to Spinka charitable
8  organizations through various individuals affiliated with Spinka,
9  including Zigelman.  Weisz provided oversight to Spinka in
10 connection with the contributions.

11      Many of the large dollar contributions were received by
12 Spinka subject to the understanding that Spinka would return a
13 substantial percentage of the contribution, between 80% and 95%,
14 back to the contributor.  Zigelman and Weisz both knew that there
15 was a quid pro quo for the contributions - that the contributors
16 would receive a substantial portion of the contribution back from
17 Spinka.  The moneys retained by Spinka were used for charitable
18 purposes in the United States and in Israel.

19      Zigelman and others acting on behalf of Spinka regularly
20 provided receipts to the contributors in the full nominal amount
21 of their contributions.  Zigelman knew that the receipts
22 indicated that the contributors were entitled to deduct, and that
23 the contributors would use these charitable donation receipts to
24 deduct, the full nominal amounts of their contributions on their
25 income tax returns, when in fact they were contributing only 5%
26 to 20% of such nominal amounts to Spinka.  By such conduct,
27 Zigelman and the contributors agreed to impede, impair, obstruct,
28 and defeat the lawful governmental functions of the Internal

8

1 Revenue Service, and to defraud the United States.

2      Knowing that some contributors could use the receipts given
3 for their contributions to Spinka to support charitable tax
4 deductions that they were not entitled to because they got cash
5 back, and may not have used all the returned cash for charity,
6 Weisz failed to inquire into the practice of issuing receipts by
7 Zigelman and others and failed to take steps to insure that the
8 receipts given reflected the actual charitable contributions
9 made.  By allowing the Spinka entities to be used as a vehicle to
10 generate false charitable deductions, and by failing to inquire
11 into the improper use of the charitable receipts and cancelled
12 checks, Weisz's actions constituted an implicit agreement with
13 the contributors and others to impede, impair, obstruct, and
14 defeat the lawful governmental functions of the Internal Revenue
15 Service and to defraud the United States.

16 Unlicensed Money Remitting

17      Weisz and Zigelman, who were living in New York, and others,
18 agreed to manage and conduct an informal money transfer system,
19 whereby individuals in Los Angeles and other parts of the country
20 would deliver to Spinka contributors money that they had received
21 from third parties who in turn were reimbursed by Spinka.  This
22 informal network allowed Weisz, Zigelman, and others to engage as
23 a business in facilitating the transfer of large amounts of cash
24 outside the conventional financial institution system.  These
25 transfers of funds affected interstate commerce.

26      The moneys returned to the contributors were in the form of
27 cash delivered to the contributor through this informal network
28 and/or in the form of international bank transfers for the

9

1  benefit of the contributor (or his designee).  As a general rule,
2  cash was returned to the contributor in the United States.
3  Weisz, Zigelman, and others directed that wire transfers be used
4  to remit funds internationally to Bircas Asher or Tzidkat Levy
5  Yitzchak, Ltd. in Israel.  In certain instances, Weisz, Zigelman
6  and others directed Bircas Asher and Tzidkat Levy Yitzchak to
7  send some of the wire funds to Israeli bank accounts controlled
8  by the contributor or their designee.  Weisz and Zigelman then
9  directed those entities to make, or assisted those entities in
10  making, some of the wire funds available in cash in Los Angeles
11  and other parts of the country to certain individuals who
12  operated as part of the informal network, and who in turn would
13  deliver the money to the contributors.
14      At the time Weisz and Zigelman engaged in these activities,
15  they knew that they had not obtained any registration with the
16  Department of Treasury or any license from any state with respect
17  to the operation of a money transmitting business and they knew
18  that no Spinka organization had obtained any registration or
19  license to operate a money transmitting business.
20  Overt Acts
21      On January 7, 2007, Weisz reviewed with Zigelman his
22  calculation that the Spinka charitable organizations had
23  received, in furtherance of the conspiracy, $8,493,659 through
24  Zigelman's efforts, overseen by Weisz, during the 2006 calendar
25  year and that Spinka had "profits" on this amount of $744,596,
26  after deducting the amounts paid back to the various contributors
27  and paid to charities in Israel.
28      On January 7, 2007, Weisz and Zigelman discussed on the

10

1 telephone that Naiman should give $116,000 to Friedman and that

2 Friedman should use $18,600 of that to give a contributor 93% of

3 his $20,000 contribution.

**VII.**

**WAIVER OF CONSTITUTIONAL RIGHTS**

14. By pleading guilty, defendant gives up the following
rights:

a)   The right to persist in a plea of not guilty.

b)   The right to a speedy and public trial by jury.

c)   The right to the assistance of legal counsel at
trial.  (In this regard, defendant understands that, despite its
plea of guilty, it retains the right to be represented by counsel
at every other stage of the proceedings.)

d)   The right to be presumed innocent and to have the
burden of proof placed on the government to prove defendant
guilty beyond a reasonable doubt.

e)   The right to confront and cross-examine witnesses
against defendant.

f)   The right, if defendant wished, to present evidence
in opposition to the charges, including the right to call
witnesses and to subpoena those witnesses to testify.

g)   Any and all rights to pursue any affirmative
defenses, Constitutional claims, and other pretrial motions that
have been filed or could be filed.

**VIII.**

**SENTENCING FACTORS**

15. Defendant understands that the Court is required to
consider the United States Sentencing Guidelines ("U.S.S.G." or

11

1  "Sentencing Guidelines") among other factors in determining
2  defendant's sentence.  There is no agreement as to defendant's
3  guideline level, criminal history, or criminal history category.

4      16.  Defendant further understands that, under United States
5  v. Booker and 18 U.S.C. § 3553(a), the Sentencing Guidelines are
6  only advisory, that the Court retains discretion to impose a
7  sentence outside of the range provided for by the Sentencing
8  Guidelines, and that the Court is required to consider the
9  factors set forth in 18 U.S.C. § 3553(a)(1)-(7) in determining
10  defendant's sentence.

11                                IX.

12                         **BINDING SENTENCE**

13      17.  Upon consideration of the sentencing factors identified
14  in 18 U.S.C. § 3553(a)(1)-(7), defendant and the USAO agree that
15  as part of this binding plea agreement, the probationary term
16  should be three years and that the fine imposed by the Court as
17  part of the sentence in this case should be within the range of
18  $1,000,000 and $2,000,000.  The parties agree to litigate the
19  appropriateness of the specific fine and the defendant's ability
20  to pay at time of sentencing.  Defendant agrees that in
21  determining the appropriateness of the fine and the ability to
22  pay, the Court and the probation office will be free to consider
23  the assets and financial condition of all the Spinka
24  Organizations given the agreement of the Spinka Organizations to
25  guarantee, and be jointly and severably liable for, any fine
26  ordered by the Court against defendant at sentencing.

27      18.  The parties are free to supplement the stipulated facts
28  within this agreement by supplying relevant information to the

1  United States Probation Office and the Court and to correct any
2  and all factual misstatements relating to the imposition of
3  sentence.

4      19.  Defendant understands that in the event the Court
5  accepts this Agreement, the Court will be free to exercise its
6  discretion to impose any probationary period up to three years
7  and any fine within the range of $1,000,000 to $2,000,000.

8                       **X.**

9                **DEFENDANT'S OBLIGATIONS**

10      20.  In connection with its plea, defendant agrees that it
11  will:

12          a)  Plead guilty as set forth in this agreement.

13          b)  Abide by all sentencing stipulations contained in
14  this agreement.

15          c)  Appear as ordered for all court appearances,
16  surrender as ordered for service of any sentence of confinement,
17  pay any ordered fines and restitution, obey all conditions of any
18  bond, and obey any other ongoing court order in this matter.

19          d)  Pay the applicable special assessment at or before
20  the time of sentencing unless defendant lacks the ability to pay.

21          e)  Within five calendar days of the entry of its plea
22  of guilty, deliver to undersigned counsel for the government a
23  Stipulation for Entry of Consent Judgment agreed to and executed
24  by defendant, Machne Sva Rotzohn, and Central Rabbinical
25  Seminary, in the form attached to this agreement, in the matter
26  United States v. $521,151.15 in Bank Account Funds and
27  $156,164.00 in United States Currency, CV 08-3398 JFW (FMOx)
28  ("Consent Judgment").  The Consent Judgment forfeits all of the

13

1  defendant's right, title, and interest in the $521,151.15 and

2  $156,164.00 named as defendants in the civil case (collectively,

3  the "Forfeited Funds").

4          f)    Defendant further agrees:

5                  (1) To waive all constitutional and statutory

6  challenges to forfeiture of the Forfeited Funds on any grounds,

7  including that the forfeiture constitutes an excessive fine or

8  punishment;

9                  (2)  To take all steps as requested by the United

10  States that are necessary to pass to the United States clear

11  title to the Forfeited Funds, including, without limitation, the

12  completing of any other legal documents required for the transfer

13  of title to the United States;

14                  (3)  Not to assist any other person in any effort

15  falsely to contest the forfeiture of the Forfeited Funds; and

16          g)    The USAO agrees that for enforcement or collection

17  purposes, the amount of any fine the Court shall impose against

18  defendant YIY shall be reduced by an amount equal to the

19  Forfeited Funds.

20  **XI.**

21  **THE USAO'S OBLIGATIONS**

22      21.   If defendant complies fully with all of its obligations

23  under this Agreement, the USAO agrees:

24          a)   To abide by all sentencing stipulations contained

25  in this agreement.

26          b)   Not to further prosecute defendant for any offense,

27  or seek criminal or civil forfeitures, arising out of defendant's

28  conduct described in the factual recitations set forth in this

1 agreement, or arising out of or relating to the allegations made
2 against defendant in the Indictment, except as otherwise
3 specifically set forth in this Agreement.  The parties
4 acknowledge that the SDNY and EDNY have agreed to be bound by
5 paragraph 21(b), and only paragraph 21(b) of this agreement, as
6 referenced in paragraph 26 below.  Defendant understands that the
7 USAO remains free to prosecute defendant for any other unlawful
8 past conduct or any unlawful conduct that occurs after the date
9 of this agreement.

10          c)   At the time of sentencing, to move to dismiss with
11 respect to defendant the Third Superseding Indictment, the Second
12 Superseding Indictment, and the First Superseding Indictment in
13 this matter.

14                               **XII.**

15                    **BREACH OF AGREEMENT**

16      22.   If defendant, at any time between the execution of this
17 agreement and defendant's sentencing, knowingly violates or fails
18 to perform any of defendant's obligations under this agreement,
19 the USAO may declare this agreement breached.  If the USAO
20 declares this agreement breached, and the Court finds such a
21 breach to have occurred, defendant will not be able to withdraw
22 its guilty plea, and the USAO will be relieved of all of its
23 obligations under this agreement.  In particular:

24          a)   The USAO will no longer be bound by any agreements
25 concerning sentencing and will be free to seek any sentence up to
26 the statutory maximum for the crime to which defendant has
27 pleaded guilty.

28          b)   The USAO will no longer be bound by any agreements

1  regarding criminal prosecution, and will be free to prosecute

2  defendant for any crime, including charges that the USAO would

3  otherwise have been obligated not to prosecute pursuant to this

4  agreement.

5      23.   Following a knowing and willful breach of this

6  agreement by defendant, should the USAO elect to pursue any

7  charge not filed as a result of this agreement, then:

8          a)   Defendant agrees that any applicable statute of

9  limitations is tolled between the date of defendant's signing of

10  this agreement and the commencement of any such prosecution or

11  action.

12          b)   Defendant gives up all defenses based on the

13  statute of limitations, any claim of preindictment delay, or any

14  speedy trial claim with respect to any such prosecution, except

15  to the extent that such defenses existed as of the date of

16  defendant's signing of this agreement.

17                              **XIII.**

18  <u>**LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK**</u>

19      24.   Defendant gives up the right to appeal any sentence

20  imposed by the Court, and the manner in which the sentence is

21  determined, provided that (a) the sentence is within the

22  statutory maximum specified above and is constitutional, (b) the

23  Court in determining the applicable guideline range does not

24  depart upward in offense level, and (c) the Court imposes a

25  sentence within or below the range corresponding to the

26  determined total fine range.  Defendant also gives up any right

27  to bring a post-conviction collateral attack on the conviction or

28  sentence, except a post-conviction collateral attack based on a

1  claim of ineffective assistance of counsel, a claim of newly

2  discovered evidence, or a explicitly retroactive change in the

3  applicable Sentencing Guidelines, sentencing statutes, or

4  statutes of conviction.

5      25.  The USAO gives up its right to appeal the Court's

6  sentence, provided that (a) the Court in determining the

7  applicable guideline range does not depart downward in offense

8  level, and (b) the Court imposes a sentence within or above the

9  range corresponding to the determined fine range.

10  **XIV.**

11  **NO ADDITIONAL AGREEMENTS**

12      26.  Except as set forth herein, there are no promises,

13  understandings or agreements between the USAO and defendant or

14  defendant's counsel, other than the agreements of EDNY and SDNY

15  to be bound by paragraph 21(b), and only paragraph 21(b) of this

16  agreement.  Nor may any additional agreement, understanding or

17  condition be entered into unless in a writing signed by all

18  parties or on the record in court.

19  **XV.**

20  **INCORPORATION INTO RECORD OF PLEA PROCEEDINGS**

21      27.  The parties agree and stipulate that this Agreement

22  will be considered part of the record of defendant's guilty plea

23  hearing as if the entire Agreement had been read into the record

24  of the proceeding.

25      This agreement is effective upon signature by defendant and

26  an Assistant United States Attorney.

27  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF CALIFORNIA

28

THOMAS P. O'BRIEN
United States Attorney

_____                    8/3/09
DANIEL J. O'BRIEN                                    Date
Assistant United States Attorney

     I have read this agreement and carefully discussed every
part of it with the attorney representing Yeshiva Imrei Yosef.  I
understand the terms of this agreement, and I voluntarily agree
to those terms.  The attorney has advised me of my rights, of
possible defenses, of the Sentencing Guideline provisions, and of
the consequences of entering into this agreement on behalf of the
corporation.  No promises or inducements have been made to me
other than those contained in this agreement.  No one has
threatened or forced me in any way to enter into this agreement.
Finally, I am satisfied with the representation of the attorney
in this matter.

_____                    August 3, 2009
Authorized Agent                                     Date
for Yeshiva Imrei Yosef

     I am the attorney for defendant Yeshiva Imrei Yosef.  I have
carefully discussed every part of this agreement with my client.
Further, I have fully advised my client of its rights, of
possible defenses, of the Sentencing Guidelines' provisions, and
of the consequences of entering into this agreement.  To my
knowledge, my client's decision to enter into this agreement is
an informed and voluntary one.

_____                    August 3, 2009
GARY LINCENBERG                                      Date

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ATTACHMENT**

1 | THOMAS P. O'BRIEN
United States Attorney
2 | CHRISTINE C. EWELL
Assistant United States Attorney
3 | Chief, Criminal Division
STEVEN R. WELK
4 | Assistant United States Attorney
Chief, Asset Forfeiture Section
5 | MONICA E. TAIT
Assistant United States Attorney
6 | Asset Forfeiture Section
California Bar No. 157311
7 |     1400 United States Courthouse
     312 North Spring Street
8 |     Los Angeles, California 90012
     Telephone: (213)894-2931
9 |     Facsimile: (213)894-7177
     E-Mail: Monica.Tait@usdoj.gov
10 |
Attorneys for Plaintiff
11 | United States of America

12 |                 UNITED STATES DISTRICT COURT

13 |           FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 |                     WESTERN DIVISION

| | | |
|---|---|---|
| 15 | UNITED STATES OF AMERICA, ) | NO.  CV 08-3398 JFW (FMOx) |
| 16 |       Plaintiff, ) | STIPULATION AND REQUEST FOR ENTRY OF CONSENT JUDGMENT |
| 17 |       v. ) | FORFEITING INTERESTS OF YESHIVA IMREI JOSEF, MACHNE |
| 18 | $521,151.15 IN BANK ACCOUNT FUNDS AND $156,164.00 IN UNITED) | SVA ROTZOHN, AND CENTRAL RABBINICAL SEMINARY IN THE |
| 19 | STATES CURRENCY, ) | DEFENDANT ASSETS |
| 20 |       Defendants. ) | (Proposed order filed concurrently) |
| 21 | YESHIVA IMREI JOSEF, MACHNE SVA) ROTZOHN, CENTRAL RABBINICAL ) | |
| 22 | SEMINARY, MARVIN A. LAZAR, AND ) YOSEF NACHUM NAIMAN, ) | |
| 23 | ) | |
| 24 |       Claimants. ) | |

25 |    IT IS HEREBY STIPULATED BY AND BETWEEN Plaintiff United

26 | States of America, through its undersigned counsel, and Claimants

27 | Yeshiva Imrei Josef, Machne Sva Rotzohn, and Central Rabbinical

28 | Seminary, individually and through their undersigned counsel, as

follows:

    1.   On May 22, 2008, plaintiff United States of America commenced this judicial forfeiture action by filing a Complaint alleging that the defendants $521,151.15 in Bank Account Funds and $156,164.00 in United States Currency (collectively, "defendant funds") are forfeitable to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C) and 984. Yeshiva Imrei Josef, Machne Sva Rotzohn, and Central Rabbinical Seminary have claimed to have interests in the defendant $521,151.15 in Bank Account Funds. Marvin A. Lazar and Yosef Nachum Naiman filed claims to portions of the defendant $156,164.00 in United States Currency, and this stipulation does not affect the claims they have already filed.

    2.   Plaintiff has notified other potential claimants of this action pursuant to Supplemental Rule G for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure. Notice of forfeiture of the defendant funds was published three times (on June 26, July 3, and July 10, 2008) in accordance with Supplemental Rule G(4)(a)(iv)(C). Apart from the claimants identified in paragraph 1 above, no claims or answers have been filed to contest the forfeiture of the defendant funds, and the time for filing claims and answers has expired. All potential claimants to the defendants other than Yeshiva Imrei Josef, Machne Sva Rotzohn, Central Rabbinical Seminary, Marvin A. Lazar, and Yosef Nachum Naiman are deemed to have admitted the allegations of the complaint.

    3.   It is the intent of the United States and claimants Yeshiva Imrei Josef, Machne Sva Rotzohn, and Central Rabbinical

2

1   Seminary to resolve all of their competing claims to the
2   defendant funds by this Stipulation and the concurrently filed
3   (proposed) Consent Judgment.  This Stipulation is part of a
4   package of agreements entered into in the matter <u>United States v.</u>
5   <u>Naftali Tzi Weisz, et al.</u>, 06-775 JFW ("Criminal Case"),
6   including binding plea agreements entered into pursuant to
7   Federal Rule of Criminal Procedure 11(c)(1)(C).  If the Court in
8   the Criminal Case determines not to be bound by the terms of the
9   plea agreement relating to Yeshiva Imrei Josef, then none of the
10  parties to this Stipulation will be bound by this Stipulation or
11  any of its terms or conditions, the Stipulation will become null
12  and void, the parties to the Stipulation will be relieved of
13  their obligations under it, and the parties to the Stipulation
14  will return to their positions prior to execution of the
15  Stipulation.
16       4.   This Court has jurisdiction over the subject matter of
17  the present action and over the parties to this agreement.
18       5.   The Complaint states a claim for relief against the
19  defendant funds.
20       6.   All right, title, and interest of Yeshiva Imrei Josef,
21  Machne Sva Rotzohn, Central Rabbinical Seminary, and all other
22  potential claimants, in the defendant $521,151.15 in Bank Account
23  Funds is hereby condemned and forfeited to the United States of
24  America.  The United States Marshals Service shall dispose of the
25  defendant $521,151.15 in Bank Account Funds in accordance with
26  law and in consultation with the seizing agency.  The defendant
27  $521,151.15 in Bank Account Funds is more particularly described
28  as follows:

                                    3

a.   $509,381.12 seized from an account ending in -3565 in the name of Yeshiva Imrei Yosef;

b.   $7,986.50 seized from an account ending in -3265 in the name of Central Rabbinical Seminary; and

c.   $3,783.53 seized from an account ending in -3965 in the name of Machine [sic] Sva Rotzohn.

7.    Except as to such rights and obligations created by this Stipulation, Yeshiva Imrei Josef, Machne Sva Rotzohn, Central Rabbinical Seminary agree to release and hold harmless the United States, and any agents, servants, and employees of the United States (or any state or local law enforcement agency), including without limitation the Federal Bureau of Investigation and the Internal Revenue Service, acting in their individual or official capacities, from all claims, actions or proceedings, including, but not limited to, any claim for attorney's fees and/or costs, or interest, which may hereafter be asserted or brought by each of them or on their behalf which are related to or arise out of the present action.

8.    All of the undersigned shall execute all documentation necessary to carry out this agreement.  Each party shall bear its own costs of litigation and attorney's fees.  Each party waives its right to appeal.  The parties agree that the Court's entry of the accompanying Consent Judgment constitutes a certificate of reasonable cause pursuant to 28 U.S.C. § 2465(a)(2).

9.    The Court retains jurisdiction over this case and the parties hereto to effectuate the terms of this agreement.  There being no just reason for delay, the undersigned respectfully request the court to direct the clerk to enter the accompanying

4

1  Consent Judgment pursuant to Rule 54(b) of the Federal Rules of

2  Civil Procedure, which constitutes a final judgment as to the

3  interests of Yeshiva Imrei Josef, Machne Sva Rotzohn, Central

4  Rabbinical Seminary, and all other potential claimants, in the

5  defendant $521,151.15 in Bank Account Funds.

6      **SO STIPULATED AND REQUESTED.**

7  Dated: _____, 2009    THOMAS P. O'BRIEN
    United States Attorney

8      CHRISTINE C. EWELL
    Assistant United States Attorney

9      Chief, Criminal Division
    STEVEN R. WELK

10     Assistant United States Attorney
    Chief, Asset Forfeiture Section

11

12     _____
    MONICA E. TAIT
    Assistant United States Attorney

13     Attorneys for Plaintiff
    UNITED STATES OF AMERICA

14

15 Dated: _____, 2009    _____

16     [Name]
    Authorized agent for claimant

17     YESHIVA IMREI JOSEF

18 Dated: _____, 2009    _____

19     [Name]
    Authorized agent for claimant

20     MACHNE SVA ROTZOHN

21 Dated: _____, 2009    _____

22     [Name]
    Authorized agent for claimant

23     CENTRAL RABBINICAL SEMINARY

24

25 Dated: _____, 2009    _____
    BIRD, MARELLA, BOXER, WOLPERT,

26     NESSIM, DROOKS & LINCENBERG
    BY: Gary Lincenberg

27     ATTORNEY FOR CLAIMANTS YESHIVA
    IMREI JOSEF, MACHNE SVA ROTZOHN,

28     CENTRAL RABBINICAL SEMINARY